67 So.2d 836

### GIBBS v. STATE.
#### 7 Div. 76.

Supreme Court of Alabama.
Oct. 29, 1953.

Wales W. Wallace, Jr., Columbiana, and C. W. McKay, Jr., Sylacauga, for appellant.

Si Garrett, Atty. Gen., and Maury D. Smith, Asst. Atty. Gen., for the State.

GOODWYN, Justice.

Appeal from a decree condemning appellant's Chevrolet pickup truck under the provisions of Section 247 et seq., Tit. 29, Code 1940, as amended. The bill of complaint alleges that appellant used this truck, or had it loaded for the purpose of using it, for the illegal conveying of prohibited liquors and beverages from one point in the state to another point in Talladega County, a "dry county."

The facts, in substance, are as follows: Appellant lives on Route 3 between Talladega and Sylacauga, in Talladega County. About 4 o'clock in the afternoon on the day the truck was seized, one Talley and one Hays, together with Talley's seven-year old son, came in a taxi to appellant's home. It seems that Hays had, before that time, asked appellant to get a cow for him, and he wanted to inquire whether the cow had been obtained. On arrival they saw appellant's brother, Thad, and asked to see appellant. Appellant was in the house lying down, and was dressed in an undershirt and with his pants on. He came to the back door, then returned inside the house and put on his shirt. In the meantime, Talley and Hays went to the truck here involved and seated themselves in the cab. The truck was parked in the driveway beside the house under a shade tree. It was facing the house and about 12 feet from it. In about three minutes, appellant came out of the house, got in the cab of the truck with Talley and Hays, and seated himself on the driver's side. After sitting there talking for ten or fifteen minutes, five law enforcement officers arrived with a warrant to search appellant's premises for prohibited liquors and beverages. Two of the officers entered the house. One of the officers came to the truck and stood there while the other two made a search outside the house. The two officers who entered the house found on the bathroom floor a one-gallon jug which contained drainings of "moonshine" whiskey. They testified that "the screw cap was on the floor beside the jug" and that "the trap in the commode contained a liquid which smelled strongly as pure 'moonshine' whiskey." The officers outside found about 3½ gallons of whiskey in a 5-gallon jug located in a cotton patch about ten or fifteen steps from the rear of the truck. They also found a 5-gallon jug of whiskey behind an outhouse about 40 feet in front of the truck. While the search was going on, the three men remained in the truck. A search was made of the truck and no whiskey was found. However, when appellant got out of the truck, the officers took a pint of whiskey off of his person. The evidence is in conflict as to whether this bottle was in appellant's pocket or in his hand. They also took from Talley a pint bottle partially filled with whiskey. It was then that the officers seized the truck. The evidence is uncontradicted that the truck had not moved. It is not clear whether the ignition key was in the car. All of the whiskey found was "moonshine," and none of it bore stamps of

the Alabama Alcoholic Beverages Control Board. Mr. Talley was called as a witness for the state and testified that he had been drinking prior to arrival at appellant's home, but did not drink any while there. He further testified that he did not see appellant take anything to drink. It is not clear where Mr. Talley's seven-year-old son was during all of this time, but there is evidence that he went to the well with Thad to get water. The evidence is without dispute that appellant had had an operation on his arm about a week before; that he had remained in the hospital three or four days, and had been at home the rest of the time recuperating; that he had not driven the truck since his operation up to the time of his arrest; that after his arrest, he drove it to Talladega when accompanied by one of the arresting officers; and that he had to have medical attention for his arm on arrival at Talladega because of such driving.

Section 247, Tit. 29, as amended by Act No. 129, appvd. July 17, 1947, Gen. Acts 1947, p. 39, supra, insofar as here pertinent, is as follows:

"All conveyances and vehicles of transportation of any kind, * * * which have been or are used for the illegal conveying of any prohibited liquors, or beverages, into this state, or from one point in the state to another point within the state, * * * shall be contraband and shall be forfeited to the state of Alabama, * * *. And, in order to condemn and confiscate any of the above mentioned vehicles or animals, it shall not be necessary for the state to show any actual movement of said vehicles or animals while loaded with any of said prohibited liquors or beverages. Provided, however, that if said prohibited liquors or beverages shall have been purchased through the state liquor stores, or shall bear the stamp of the Alabama alcoholic beverages control board, no such conveyance, vehicle or animal shall be confiscated or forfeited unless the court shall be convinced from the evidence that said prohibited liquors or beverages were being transported for the purpose of re-sale,

contrary to law. That the owner or operator of said vehicle has a reputation of being a seller of prohibited liquors shall be prima facie evidence that such liquors or beverages were being transported for resale."

It is clear from the evidence that the whiskey with which we are here concerned was not purchased through the state liquor stores and did not bear stamps of the Alabama Alcoholic Beverages Control Board. Therefore, the last two sentences of Section 247, as amended, supra, which were added by the 1947 Amendment, have no relevancy to this case. As stated in Deerman v. State, 253 Ala. 632, 634, 46 So.2d 410, 412, this part relates "to the condemnation and forfeiture of vehicles transporting prohibited liquors or beverages which have been purchased through State liquor stores or which bear the stamps of the Alabama Alcoholic Beverages Control Board."

The original counterpart of Section 247, enacted in 1919, Gen.Acts 1919, p. 13, § 13, did not contain the present provision making it unnecessary for the state, in order to condemn, to show any actual movement of the vehicle. That provision was added in 1927, Gen.Acts 1927, p. 715. Prior to that amendment, it was held that a vehicle did not become contraband until it actually moved. Carey v. State, 206 Ala. 351, 89 So. 609. With respect to this amendment, we had this to say in Kelley v. State, 219 Ala. 415, 417, 122 So. 638, 639:

"The amendment above quoted was evidently intended to meet the majority decision in the Carey Case, supra, and to write the views of the minority into the law.

\* \* \* \* \* \*

"We do not think this amendment creates a presumption that every car found with a pint of liquor in it is subject to condemnation. The statute does not deal with presumptions.

\* \* \* \* \* \*

"*If found in a vehicle, a means of conveyance, in such quantities and in such containers as to lead to a natural inference that it was there to be transported, or if the time and place*

*or other circumstances warrant a reasonable inference that it has been transported to the place found in the car or is there to be transported, the state's case is made out.*

"This court has given our prohibition statutes such construction as to carry out the legislative intent, a construction exacting diligence of the owner whose car has been caught transporting liquor. *A further presumption that the car is so used, thus, in effect, imposing on him the burden of proving his innocence, is so out of harmony with our notions of justice and freedom, as not to be indulged unless the intent is clear and the presumption created does not infringe upon constitutional rights.*

\* \* \* \* \* \*

*"We hold the burden is on the state to show the car was used in transporting liquors as defined in the amended statute."* [Emphasis supplied.]

And in Parrish v. State, 221 Ala. 312, 313, 128 So. 785, 786, we stated as follows:

"The effect of the amended statute is to work a confiscation of any vehicle, or animal, into or upon which any prohibited liquor or beverage has been *loaded for transportation,* whether transported or not. The purpose of the amendment is to meet and obviate the decision in Carey v. State, 206 Ala. 351, 89 So. 609, where it was decided that there could be no conveyance of intoxicating liquor by an automobile standing still. The effect of the amended statute is to denounce, and punish by forfeiture of animal or vehicle, the placing on any animal, or in any vehicle, intoxicating liquor or beverage *for transportation."* [Emphasis supplied.]

In the Parrish case, the opinion contains the following reference to the facts of the case:

"The case for condemnation of the automobile was that officers saw the owner reach into the automobile, take out a bottle of whisky, and walk away with it until they took him into custody. No witness saw the automobile move."

It might be inferred that these were all of the facts in support of the decree of condemnation. However, an examination of the record discloses the following additional facts: The automobile was parked on a public street in front of a house of prostitution; there was a drunk woman in the car; the back seat was out of the car; there were empty whiskey bottles and a blanket behind the front seat; respondent had been twice convicted of "whiskey" violations; he testified that he had driven the car to the place where seized about an hour before, and was "intending to go" for a ride with the woman in the car. The defense was that he had gotten the bottle of whiskey out of a trash can where it had been deposited in accordance with an order placed by him for the whiskey, and that he had not taken it out of the car. Thus, it is apparent that the factual situation there was quite different from the instant case.

■■ Although the state is not required to prove actual movement of the vehicle, it does have the burden of proving that the prohibited liquor or beverage has been "loaded for transportation" or, as expressed in Kelley v. State, supra, "loaded for movement." We do not think the state has met that burden. There is no evidence that appellant used or intended using the truck for transporting prohibited liquors, and we do not think the circumstances warrant a reasonable inference of such use or intended use.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.