The State of Alabama, by and through the district attorney of DeKalb County, filed a complaint in equity against Paul Mars and one 1972 Ford Thunderbird, under the provisions of Title 29, Section 247 et seq., Code of Alabama (1940), for the condemnation and forfeiture of said automobile because it had been used to transport prohibited alcoholic beverages.
In its motion to intervene Commercial Credit Corporation asserted a superior claim arising from its perfected security interest in the vehicle and denied it had any knowledge or information that Mars had a reputation for dealing in prohibited intoxicating liquors at the time it extended him a loan. The court granted permission to intervene. Mars did not contest the condemnation proceedings.
After hearing the evidence ore tenus, the trial court ordered the vehicle condemned as contraband, forfeited to the state and sold. Intervenor's claim was denied. The trial court based its judgment on the failure of the intervenor to exercise due diligence to obtain knowledge of the use that might be made of the automobile or to take steps to prevent the same. Intervenor appeals. We affirm.
DeKalb County court records indicated Mars had eight convictions for violation of the prohibition laws — two in 1961, one in 1968, one in 1969, three in 1970, one in 1971. In February, 1976, Mars was convicted of transporting and sentenced to three years in the state penitentiary but the Court of Criminal Appeals reversed and remanded for a new trial. Mars v.State, Ala.Cr.App., 339 So.2d 104 (1976). A 1971 Dodge Polara owned by Mars was condemned as a result of that case and legal notices in regard thereto appeared in January of 1976 in a bi-weekly DeKalb County newspaper. The newspaper also reported the indictment, trial and sentencing of Mars during January and February.
Mars purchased the Thunderbird in March with a loan from intervenor Commercial Credit in Gadsden. When intervenor financed a mobile home purchase by Mars in 1969, he had generally met his payments in a timely manner.
On the occasion of the auto loan Commercial Credit checked with a credit bureau in Ft. Payne and two credit references (his bank and a local merchant which had previously extended credit) which Mars gave on his credit application. These sources revealed Mars had a good credit rating. The credit bureau report also showed that Mars had been charged with a violation of the prohibition laws in 1969 but indicated no disposition of the case. Commercial Credit made no further inquiries about Mars.
The loan manager for Commercial Credit testified that in extending credit it was not the customary practice to check with the sheriff of another county absent some reason for suspicion, that normally they made no personal reference calls or checks of local news media, and that she did not make additional inquiries because the charge was seven years old. Employees of two other credit companies in Gadsden testified that they would have followed the same practice as intervenor in this case.
On April 25, 1976, a deputy sheriff saw Mars purchasing beer from a Gadsden distributor. When Mars came into DeKalb County an officer tried to stop him but he crossed the median on the interstate and headed back into Etowah County. A chase by officers ended when the Thunderbird crashed into a barrier. Eighteen cases of beer were found in the vehicle.
Three witnesses — the deputy, a former sheriff who was employed by the district attorney, and the DeKalb County District Court judge — all testified that Mars had a general reputation for dealing in whiskey and beer. The judge indicated this was Mars' reputation in the community and area of the county in which he lived. The deputy indicated his judgment concerning Mars reputation in the community was based on personal encounters and what other citizens had told him. *Page 1133 
The State thus met its burden of proof that the vehicle had been used to transport prohibited beverages. Lee v. State exrel. Hare, 259 Ala. 455, 66 So.2d 881 (1953); Kelley v. State,219 Ala. 415, 122 So. 638 (1929); Carter Guaranty Co. v. State,214 Ala. 432, 108 So. 246 (1926).
In a case for condemnation of a contraband vehicle once the State has met its burden of proof, the burden is on the intervenor to establish its superior claim and to show it had no knowledge or notice of the illegal use of the car and could not by reasonable diligence have obtained knowledge of the intended illegal use so as to prevent such use. U-Haul Companyof Alabama v. State, 294 Ala. 330, 316 So.2d 685 (1975);Alabama Discount Corp. v. State ex rel. Stephens, 271 Ala. 338,123 So.2d 416 (1960); State ex rel. Tate v. One LexingtonAutomobile, 203 Ala. 506, 84 So. 297 (1919). This rule was elaborated upon in Flint Motor Car Co. v. State, 204 Ala. 437,85 So. 741 (1920);
 "In other words, if the claimant knows the character of his vendee or mortgagor, and does not know or has not heard of his violating the prohibition law, or if he does not know him, ordinary prudence should suggest inquiry, and if he does not gain information that he has been considered a violator of the prohibition law, then he makes out a prima facie case of no negligence in the sale or disposition of the car, and would be entitled to a decree of nonforfeiture of his claim unless the state rebuts this prima facie case by contradictory evidence or circumstances, or by showing the happenings of subsequent events which would arouse the suspicion of a reasonably prudent man so as to cause action upon his part to prevent the further use of the property for unlawful purposes, and which he failed to prevent. . . ."
The issue presented for review is whether intervenor had knowledge or notice of the illegal use or could have obtained such by the exercise of reasonable diligence.
All the cases called to our attention by appellant intervenor are distinguishable because here there is testimony of Mars' general bad reputation in the community for dealing in prohibited liquors and beverages. In Brandon v. State, 261 Ala. 378, 74 So.2d 606 (1954), the wife successfully intervened to claim the car since there was no evidence that the husband had such a reputation even though he had five years before been convicted for a violation of the prohibition laws. In Tittle v.State, 252 Ala. 377, 41 So.2d 295 (1949), the wife successfully intervened to claim the car since the only evidence of such bad reputation was the testimony of police officers based on prior convictions for possession. In Commercial Nat. Bank of Annistonv. State ex rel. Dormon, 251 Ala. 409, 37 So.2d 644 (1948), the bank successfully intervened to claim the car when several officers testified that McElroy had a reputation as a bootlegger among police officers while other testimony showed McElroy had a good reputation in the county in which he resided.
The rule in Alabama is that evidence of a purchaser's bad general reputation for bootlegging or dealing in prohibited liquors tends to give notice of the probable future use of the vehicle for the illegal transportation of intoxicating liquors.Alabama Discount Corp. v. State ex rel. Stephens, supra;People's Auto Co. v. State, 218 Ala. 553, 119 So. 662 (1929); 14 A.L.R.3d 221 at 275-85 (1967).
For the purchaser's bad reputation to be notice or knowledge imputed to the intervenor so as to constitute culpable negligence in allowing the purchaser to obtain the vehicle, the bad reputation must be a general reputation; it must exist at the purchaser's place of residence, or at his place of business or occupation; and it must have existed at the time the car was sold. Wright Motor Co. v. State, 214 Ala. 120, 106 So. 868
(1926). All three of these elements are present here.
The reasoning of cases such as Alabama Discount and People'sAuto is that where the purchaser has a general reputation for dealing in prohibited alcoholic beverages, the intervening claimant by the exercise of *Page 1134 
reasonable diligence should or could have obtained knowledge or notice that the vehicle might be used to violate the liquor laws. State ex rel. Randall v. Martin, 253 Ala. 487,45 So.2d 286 (1950); 14 A.L.R.3d 221 at 275-85.
Furthermore, we find the intervenor here failed to exercise due diligence when put on notice of the prior charge of violating the prohibition laws. It should have inquired further when there was no information concerning the disposition of the 1969 case. If it had checked for that with reasonable diligence, it would have obtained knowledge of the other convictions and charges. We do not think the enactment of Title 29, Section 262, Code of Alabama (1940) in 1971 to permit the possession of small amounts of liquor and beer for private use in dry counties absolves intervenor of any responsibility to inquire further in cases where it knows of charges for violating the prohibition laws prior to 1971.
Intervenor has failed to show that by the exercise of reasonable diligence it could not have obtained knowledge or notice of such illegal use of the vehicle. See Flint Motor CarCo. v. State, supra; 14 A.L.R.3d 221 at 272-75.
We reiterate the exhortation of the United States Supreme Court in Calero-Toledo v. Pearson Yacht Leasing Co.,416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, reh. denied 417 U.S. 977,94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974), for the benefit of intervenor and other credit companies:
 "To the extent that such forfeiture provisions are applied to lessors, bailors or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property."
Finding that the intervenor failed to exercise reasonable diligence which would have revealed knowledge of the intended illegal use of the vehicle, we affirm the dismissal of intervenor's claim.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.