Appeal from a lower court judgment condemning and forfeiting one 1974 GMC tractor-truck. We affirm in part, reverse in part, and remand.
 I.
The condemnation action initiated by the State in the instant case is based upon the same set of facts we addressed in AirShipping International v. State, Ala., 392 So.2d 828 (1981). In that case we affirmed the condemnation and forfeiture of one DC6-A airplane used in the transportation of 9,310 pounds of marijuana. The airplane and marijuana were initially seized on June 12, 1979 at the Greensboro Airport in Hale County. In addition, law enforcement officers also confiscated a 1974 GMC tractor-truck, the subject matter of this appeal. The seizure of this truck was prompted by the fact that it was observed backing up to the cargo door of the airplane. It is undisputed that at the time of its confiscation the truck was both owned and operated by appellant Allen E. Singleton.
On June 21, 1979, the State initiated condemnation proceedings against the GMC tractor-truck alleging that the truck, by pulling a trailer, was used or intended to be used for the transportation of a controlled substance. See Code 1975, § 20-2-93 (a)(4). Singleton promptly filed an answer to the complaint admitting his ownership of the vehicle but denying that it was ever used in any criminal activity. He thereafter filed a motion to dismiss alleging lack of jurisdiction, insufficiency of process, misjoinder of claims, failure to join indispensable parties and improper venue. The trial court denied *Page 1052 
this motion and set the cause for trial. When neither Singleton nor his representatives appeared at trial, a default judgment was entered in favor of the State.
Singleton subsequently filed a motion to set aside the default judgment alleging, inter alia, that he had a meritorious defense to the complaint in that appellant First National Bank of Baldwin County held a bona fide security interest in the vehicle. The record indicates that in May of 1979 Singleton borrowed approximately $16,000.00 from the Bank for the purchase of a 1975 White 2TGT tractor-truck. Singleton had purchased the GMC truck approximately two years earlier and wanted to purchase the White truck so that his wife could enter the trucking business. As security for the 1979 loan, the Bank perfected a UCC-1 security interest in both trucks. On the basis of these security interests, the Bank also filed a motion to set aside the forfeiture of the GMC truck alleging that it held an interest in the subject vehicle but failed to receive notice of the prior condemnation hearing.
On January 24, 1980, as a result of a stipulation entered into between the parties, the trial court granted the appellants' motions to set aside the default judgment. That stipulation provided, in part, that the appellees believed that justice could best be served by giving the appellants an opportunity to present any credible evidence which might substantiate a superior claim.
At trial Singleton denied any knowledge of transporting any marijuana or other controlled substance, and stated that he was hired to haul furniture from Tuscaloosa to Birmingham. Singleton was, in fact, tried in federal district court on criminal charges and found not guilty of any culpable conduct. Likewise, Norman Stone, III, an employee for appellant Bank, testified that the Bank had absolutely no knowledge that the truck was going to be used for any illegal purposes. The trial court heard this evidence ore tenus and, on February 8, 1980, entered its order condemning the truck and forfeiting it to the State. The appellants thereafter perfected this appeal.
 II.
Appellants cite Gibbs v. State, 259 Ala. 561, 67 So.2d 836
(1953) and Winstead v. State, Ala.Civ.App., 375 So.2d 1207
(1979) as authority for the proposition that the State must affirmatively prove that a conveyance was "loaded for movement" before it can condemn the conveyance for being used to facilitate the transportation of a controlled substance; however, a close analysis of the applicable forfeiture statute indicates that a lesser burden of proof may apply.
Code 1975, § 20-2-93 (a)(4) provides, in pertinent part, that "[a]ll conveyances, including aircraft, vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the transportation" (emphasis added) of controlled substances may be forfeited. In Gibbs this Court construed analogous forfeiture provisions governing the condemnation and forfeiture of vehicles "used" in the importation and/or transportation of prohibited liquors and beverages. See Code of 1940, Tit. 29, § 247 (now Code 1975, §28-4-285). Those provisions specified the burden of proof imposed upon the State and provided that "[i]n order to condemn and confiscate any of the above-mentioned conveyances or vehicles or animals, it shall not be necessary for the state toshow any actual movement of said conveyances, vehicles or animals while loaded with any of said prohibited liquors or beverages . . ." (emphasis added). In Gibbs the Court noted that these procedural provisions were added by the Alabama legislature in response to prior case authority which held that a vehicle did not become subject to forfeiture until it was loaded with contraband and actually moved. See, e.g., Carey v.State, 206 Ala. 351, 89 So. 609 (1921). As amended, these forfeiture provisions expressly removed that requirement; however, in strictly construing the statute the Court concluded that the State still carried the burden of proving that the prohibited beverage had been "loaded for transportation" or "loaded for movement." Gibbs, supra, at 259 Ala. 564,67 So.2d 83. In other words, a conveyance *Page 1053 
was not "used" for the transportation of prohibited beverages until loaded.
In Winstead v. State, supra, the Court of Civil Appeals relied on Gibbs in applying the forfeiture provisions outlined under Alabama's Controlled Substances Act. In Winstead the appellant argued that the State had failed to prove that the controlled substance found in his vehicle was "loaded for movement." The court relied on Gibbs for its holding that the State is not required to prove actual movement of a vehicle for the provisions of § 20-2-93 (a)(4) to be operative. In applying the language of § 20-2-93 (a)(4) the Court concluded that the State, by discovering a large quantity of a controlled substance in the appellant's vehicle, minimally met its burden of proving that the vehicle was intended to transport a controlled substance. Contrary to the argument of the appellant, the court did not hold that the State, in all cases, must prove that a controlled substance was loaded for transportation. The decision is expressly limited to its facts.
Section 20-2-93 (a)(4) addresses the forfeiture of two specific types of conveyances, viz., those conveyances "used" in the transportation of a controlled substance and those conveyances "intended for use." Were we dealing with a conveyance purportedly "used" to transport controlled substances, we would be inclined to follow the precedent established in Gibbs; however, the question currently confronting this Court is: Was Singleton's truck "intended for use" in transporting the 9,310 pounds of marijuana discovered aboard the DC6-A airplane? Several witnesses testified that the truck was observed backed up to the cargo door of the airplane. Likewise, approximately sixty feet of eighteen inch wide rolling conveyor was discovered in the trailer attached to the vehicle. The trial court, therefore, concluded that the vehicle was indeed intended to facilitate the transportation of the marijuana. Under the possible interpretations of this evidence, we are not convinced that this decision was palpably erroneous or manifestly unjust.
 III.
When the State met its burden of proving that the vehicle was used in violation of Code 1975, § 20-2-93, it established aprima facie case for the seizure, condemnation and forfeiture of the vehicle. U-Haul Company of Alabama v. State, 294 Ala. 330, 316 So.2d 685 (1975). As we noted in Air ShippingInternational, supra, when this prima facie case is established, it becomes incumbent upon any claimants to show that they had no knowledge or notice of the intended illegal use and could not have obtained knowledge by reasonable diligence. See Flint Motor Car Co. v. State, 204 Ala. 437,85 So. 741 (1920). Both appellants contend they have met this burden. We disagree.
As we noted previously, Singleton repeatedly testified that he did not know that his truck was to be used to transport marijuana. Singleton's acquittal in federal district court supports this testimony and represents credible evidence bearing upon Singleton's knowledge or consent to the intended illegal activity. Cf., One Lot Emerald Cut Stones and One Ringv. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438
(1972) (United States Supreme Court noted that prior acquittal may resolve the issue of whether a requisite criminal intent accompanied the illegal activity). However, under the facts of this case, we are not convinced that Singleton could not have obtained knowledge by reasonable diligence.
In early June 1979, Singleton was hired by one Bobby Raulston to haul a load of furniture from Tuscaloosa to Birmingham. Singleton testified that he had actually met Raulston on one earlier occasion. When Singleton encountered difficulty in finding an available rental furniture trailer for the weekend in question, he was informed by Raulston that an ordinary trailer would suffice. He was also told that he would not need to rent any furniture pads. Upon arriving in Tuscaloosa on Saturday, June 10th, Singleton secured a room at a hotel across the street from the hotel where Raulston was staying. There, he was contacted *Page 1054 
by Raulston and informed that the "place" had been changed and that they were not going to move furniture that day. At 10:00 P.M. the next evening, Raulston contacted Singleton and directed him to drive to the Greensboro Airport in Hale County. Raulston told Singleton that they were going there to pick up several items stored in a tin building, viz., tires, television sets and microwave ovens. Singleton arrived at the airport at approximately 1:00 A.M. and waited in his truck until the DC6-A airplane arrived approximately two hours later. Singleton testified that until law enforcement officers arrived he was never suspicious and never thought to ask any questions.
We believe that under the circumstances outlined above a reasonably prudent person would have been placed on notice to make reasonable inquiry. Edwards v. State, 213 Ala. 122,104 So. 255 (1925). Why was the "place" changed? Why was there a delay in moving the furniture? Why was he no longer going to move furniture? Why wait at the airfield for approximately two hours when the articles he was to haul were allegedly stored in a tin building? Why the secrecy? The trial court concluded that Singleton failed to exercise reasonable diligence, and under the facts of this case we do not believe this decision was clearly wrong. We, therefore, affirm the forfeiture of the vehicle as to Singleton's interest.
As far as the Bank's interest is concerned, we are constrained to reach a different conclusion. As the holder of abona fide security interest, the Bank, like any other intervenor, carried the burden of proving that it did not have knowledge or notice of the intended illegal use and that it could not have obtained knowledge by reasonable diligence.Commercial National Bank of Anniston v. State ex rel. Dorman,251 Ala. 409, 37 So.2d 644 (1948). In Hartzog-Ganey Motor Co.v. State, 222 Ala. 50, 130 So. 771 (1930), this Court thoroughly discussed the necessity of lack of knowledge and reasoned as follows:
 Under the rule now well recognized in this state, if claimants had no knowledge or notice that the car was to be used for any unlawful purpose, or no knowledge or notice of any fact calculated to excite suspicion, so as to put a reasonably prudent person on inquiry as to such intended use, then inquiry on their part was not demanded. "This rule was adopted as reasonable and just and as expressive of the legislative intent that innocent parties free from fault should not suffer loss through the wrong of another." Edwards v. State, 213 Ala. 122, 104 So. 255, 256; General Motors Acceptance Corp. v. State, 217 Ala. 571, 117 So. 181; Auburn Sales Co. v. State, 219 Ala. 360, 122 So. 463; Wright Motor Co. v. State, 214 Ala. 120, 106 So. 868, 869. [Emphasis added.][1]
The requisite notice necessary to excite suspicion and stimulate inquiry is necessarily determined by the facts of each particular case. It may be notice imputed by law, such as the reputation and general character of the violator in the community in which he works and lives. Biehl v. State, 234 Ala. 304,174 So. 494 (1937); Riley-Aikens Chevrolet Co. v. State,224 Ala. 42, 138 So. 412 (1931); Auburn Sales Co. v. State,223 Ala. 184, 134 So. 867 (1931); Koger v. State, 215 Ala. 319,110 So. 573 (1926). It may be actual notice or knowledge of the violator's disreputable character or conduct. Deerman v. State,253 Ala. 632, 46 So.2d 410 (1950); State ex rel, Randall v.Martin, 253 Ala. 487, 45 So.2d 286 (1950); Parker v. *Page 1055 State, 219 Ala. 362, 122 So. 464 (1929). If such notice or knowledge exists, a secured creditor will not be entitled to an allowance of its claim.
The record reveals that prior to securing the $16,000.00 loan in 1979, Singleton had dealt with the Bank as a customer for several years. He was personally known at the Bank and was established in the trucking industry. He had no record of prior criminal activity and apparently held a good reputation in the community. On the basis of this evidence, we hold that the Bank was not chargeable with any facts which might have prompted the need to make additional inquiry. It did not have actual knowledge of Singleton's involvement, nor did it have knowledge of any fact calculated to excite suspicion. We, therefore, hold that the Bank was entitled to an allowance of its claim.
In reaching this conclusion, we do not hold that the Bank's interest precludes the forfeiture. Code 1975, § 20-2-93
(a)(4)(c) expressly provides:
 A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of nor consented to the act or omission. [Emphasis added.]
This provision contemplates the forfeiture of encumbered conveyances, subject, of course, to the interests of secured parties. The clear language of the statute evidences a legislative intent to protect bona fide lienholders without destroying the right of the State to condemn a vehicle used in violation of the Controlled Substances Act. Cf., ConsolidatedLoan Co. v. State, 75 Ga. App. 77, 41 S.E.2d 802 (1947). This construction is in accord with the procedure adopted in numerous Alabama cases wherein vehicles were forfeited and sold, subject to the claims of innocent claimants. Middlebrooksv. State, 248 Ala. 402, 27 So.2d 867 (1946); Hartzog-GaneyMotor Co. v. State, supra; General Motors Acceptance Corp. v.State, 217 Ala. 571, 117 So. 181 (1928); State ex rel. Siebelsv. Farley, 206 Ala. 172, 89 So. 510 (1921); see generally,Annot., 14 A.L.R.3d 221, 321 (1967). The Bank is, therefore, entitled to recover from the proceeds to the extent of anyundersecured debt; that is to say the Bank may recover to the extent that the outstanding debt now exceeds the value of any remaining collateral. In this way, the lienholder is secured, and the public is protected by permitting the forfeiture of vehicles used in crime.
Accordingly, the lower court judgment is affirmed insofar as it forfeits Singleton's interest in the subject vehicle. The judgment is reversed insofar as it forfeits the interest of the secured creditor. The cause is, therefore, remanded with instructions that the subject vehicle be forfeited and sold with the proceeds being subject to the Bank's interest in the amount of any undersecured debt.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] This "well recognized rule" was initially adopted by this Court in Edwards v. State, 213 Ala. 122, 104 So. 255 (1925). InEdwards, the Court, by a four to three decision, expressly overruled McCormack Bros. Motor Car Co. v. State, 213 Ala. 6,102 So. 894 (1925) which held that, in order to exercise reasonable diligence, a mortgagee or conditional vendor was required to make inquiry in the community as to the character of the mortgagor or purchaser to ascertain if the vehicle would be used in an illegal fashion. A mere checking of business references supplied by the mortgagor or purchaser would not suffice. The Court in Edwards believed this rule was impracticable, and would seriously impair the business world engaged in the sale of means of transportation. These pragmatic concerns are equally true today.