These consolidated appeals come to us from the Circuit Court for Baldwin County. Nicaud, Collier, and Godwin appealed adverse judgments of the trial court ordering the condemnation and forfeiture of the "Ricky G.," a shrimp boat, and one 1980 Ford pick-up truck. Nicaud and Collier, each fifty percent shareholders in the Ricky G., Inc., intervened in the proceeding against the boat. Godwin, owner of the pick-up truck, appeared in the proceeding against it. The Baldwin County district attorney had commenced equitable proceedings under Code 1975, § 20-2-93, to condemn and forfeit the boat and truck. The State alleged that the boat was used to transport marijuana, and that the truck was used to facilitate the transportation of marijuana. Forfeiture of the boat and truck was sought pursuant to Code 1975, § 20-2-93 (a)(4). Nicaud, Collier, and Godwin present several issues for our consideration in reviewing the propriety of the trial court's decisions. We believe the issues concerning the alleged illegality of the warrantless search and seizure of the "Ricky G.," and the insufficiency of the evidence pertaining to the pick-up truck, control the disposition of these appeals. We will consider separately the cases involving the "Ricky G." and the 1980 Ford pick-up truck. *Page 45 
 I. "Ricky G."
Collier contends that the trial court erred in denying his motion to suppress the evidence obtained as the result of the warrantless search of the "Ricky G." That search revealed the "Ricky G." was loaded with approximately 7,000 pounds of marijuana. If the marijuana was obtained by an illegal search and seizure, we believe that it is properly excluded from a subsequent forfeiture proceeding. The rule has been stated to be:
 The evidence in a proceeding for forfeiture of property used in connection with the violation of narcotics drug laws must be competent, relevant and material to be admissible, and evidence discovered during the course of a justifiable search of the vehicle which is the subject of the proceeding is admissible. Where the purpose of the forfeiture of the vehicle is deterrent in nature and there is a close identity to the aims and objectives of criminal law enforcement, the exclusionary rules applicable in criminal prosecutions should apply in forfeiture proceedings with respect to illegally seized evidence. [Footnotes omitted.]
28 C.J.S. Drugs Narcotics Supplement § 145 (b) (1974).
The forfeiture provisions in Code 1975, § 20-2-93, are clearly intended to be a deterrent to illegal drug dealing, and to aid the objectives of criminal law enforcement. The above-cited rule, providing for the exclusion of illegally seized evidence, properly applies to the instant case. Equity will not sanction the forfeiture of property based upon evidence obtained in violation of fundamental constitutional rights.
In reviewing the proceeding against the "Ricky G.," we believe that the search and seizure conducted by the Baldwin County Sheriff's Department was illegal under the 4th Amendment to the United States Constitution as made applicable to the states by the 14th Amendment. The trial court erred by denying the motion to suppress.
The alleged facts upon which the Baldwin County Sheriff's Department relied in searching the "Ricky G." are as follows. On February 9, 1980, at 11:30 p.m., Deputies Pierce and Davis of the Baldwin County Sheriff's Department observed a car and a large truck pull into and drive behind Moesch's Diesel Shop at the Intracoastal Waterway in South Baldwin County. A license tag number from the car was obtained, and it was learned that the car belonged to Hertz Corporation in Mobile. The deputies drove away, but returned one-half hour later. They found that both the car and truck had left, and there was a chain across the driveway where the vehicles had stopped. One of the deputies testified that he had never previously observed a chain across the driveway. The deputies then looked for the truck in other areas, but without success. They returned to the driveway at 3:00 a.m., February 10, 1980, and found the chain down. There were tire tracks of a truck leading from the driveway to the highway. After again looking elsewhere for the truck, the deputies abandoned their search and went home.
Later during the morning of February 10, 1980, Deputy Pierce went back to the driveway with Chief Deputy Anderson. They entered the driveway after removing the chain which was now up again. In the back they observed an imprint of the bow of a boat in the bank of the canal. They also observed some gloves and burlap bags on the ground. Upon leaving they noticed the "Ricky G." at Moesch's Shipyard, two or three hundred yards in the distance. The boat had not been there the previous night. Closer observation revealed the boat had mud on its bow matching the imprint seen earlier in the canal bank.
Surveillance of the "Ricky G." was set up at 11:00 a.m. No one was seen at the boat. At 12:30 p.m., Chief Deputy Anderson and Deputy Pierce walked onto the gangplank of the boat and called out. Receiving no answer, they left without boarding. They then called Mr. Ervin Redding, shipyard foreman at Moesch's, to come to the scene. Mr. Redding had no knowledge concerning the boat. The deputies accompanied Mr. Redding onto the "Ricky G." at 1:30 p.m. On board, they found no one. In the course *Page 46 
of looking through the boat, Mr. Redding discovered the marijuana upon opening the hatch to the hole. Mr. Redding and the deputies left. Surveillance was continued with arrests being made later that night.
At the outset, we note that there are six exceptions to the requirement for a search warrant. They are: plain view; consent; incident to a lawful arrest; hot pursuit or emergency situations; exigent circumstances coupled with probable cause; and, stop and frisk situations. Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973); Richardson v. State, 376 So.2d 205, 213
(Ala.Cr.App. 1978), aff'd. 376 So.2d 228 (Ala. 1979); Baker v.State, 340 So.2d 854 (Ala.Cr.App. 1976). If the state is to come within any of the above exceptions, it must be the exception provided for exigent circumstances coupled with probable cause.
Probable cause cannot be founded upon mere suspicion.Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302,93 L.Ed. 1879 (1949); McCurdy v. State, 42 Ala.Cr.App. 646,176 So.2d 53 (1965), cert. denied 278 Ala. 710, 176 So.2d 57
(1965). The United States Supreme Court in Brinegar observed:
 "The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." . . . And this "means less than evidence which would justify condemnation" or conviction as Marshall, C.J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion. Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. [Footnotes omitted.]
Brinegar, at 175-6, 69 S.Ct. at 1310-1311; Daniels v. State,supra.
Applying the standard required for probable cause, we do not believe that the activities observed by the deputies were sufficient to justify a search of the "Ricky G." None of the activities observed, whether considered either individually or collectively, can allow one to reasonably believe that a crime was being committed. At the most, the incidents observed create mere suspicion. The deputies did not have occasion to observe any individual involved in the activities of that day or the previous night. They knew of no one's identity who was involved in what they believed to be illegal activity. The deputies did not observe any evidence of marijuana either at the scene or in the large truck seen the night before the search. Prior to their entry aboard the "Ricky G.," they observed nothing that could allow them to conclude the boat held marijuana. Even assuming that the burlap bags found on the bank can be connected with the "Ricky G.," that fact does not help create probable cause. There are many legitimate uses of burlap bags, particularly in a nautical context. We note the following cross examination of Deputy Pierce that occurred at the hearing on the motion to suppress:
 Q. Now, all this that you had seen, the car and the truck and the burlap bags and the chain being up when it wasn't previously, that made you suspicious; didn't it, Mr. Pierce?
A. Yes, sir.
Q. But you hadn't seen any marijuana, had you?
A. No, sir.
 Q. You didn't know whether or not this might be that sort of situation, did you?
A. For sure, no, sir.
 Q. So, you had seen a car down there at a later hour of the night?
A. (Nods head affirmatively.)
 Q. You had seen an 18-wheeler truck at a later hour of the night?
A. (Nods head affirmatively.)
 Q. And later in the daytime, you had seen some burlap bags there by the bank?
A. (Nods head affirmatively.) *Page 47 
 Q. And you had seen an indentation in the shore that could have been made by a boat, but you didn't know, didn't have any evidence at that point of any marijuana; did you?
A. No, sir.
 Q. So, with that fact situation, you did make some effort through [customs] to find out who owned this boat before you went aboard it?
A. Yes, sir.
 Q. But you made no effort to get any kind of search warrant?
A. No, sir.
 Q. And then, you and Mr. Anderson and Mr. Redding, you went aboard the boat and started looking around; is that right?
A. Yes, sir.
 Q. Tell Judge Wilters what your purpose and intent was in going on the boat, Mr. Pierce.
 A. Well, in my mind, there was enough reasonable suspicion* on my part to believe that there was marijuana on the boat.
 Q. So, you went aboard that boat for that purpose, to see?
A. Yes, sir.
Q. To see whether or not there was marijuana there?
A. Yes, sir, I did.
Q. And that was your reason for going on it?
A. Yes, sir.
Even in the absence of Deputy Pierce's statement, we believe there is no articulable basis upon which probable cause could be said to exist. The facts speak for themselves, and they cannot be heard to say probable cause.
The state argues that the special expertise of a law enforcement officer in the area of illegal drug dealing should be considered in determining whether probable cause existed for a search and seizure. Although the state cites no cases on this point, we note that cases recognizing the principle that the special expertise of an officer may be considered in upholding probable cause usually deal with arrest and detention situations. Even there, probable cause is supported in situations where the officer has a greater quantum of knowledge than exists in the present case. Brown v. Texas, 443 U.S. 47,99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (noting principle but distinguishing it from a situation where suspect was illegally detained on basis he merely looked suspicious without any basis upon which to suspect misconduct); United States v.Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607
(1975) (recognizing principle, but holding illegal United States Border Patrol's stopping of an automobile near the Mexican border because occupants appeared to be of Mexican ancestry); Christensen v. United States, 259 F.2d 192 (D.C. Cir. 1958) (arrest and seizure upheld where officer acted upon personal observation of suspect's activity and informant's tip). In the instant case, regardless of whatever expertise the deputies may have possessed in the field of drug related crimes, there were insufficient objective facts that could be coupled with their expertise to result in probable cause.
Next, the state suggests that probable cause can be supplied by Mr. Redding's allegedly independent discovery of the marijuana. The United States Supreme Court in Coolidge v. NewHampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), remarked that the 4th and 14th Amendments do not afford protection against illegal searches and seizures by private citizens. However, where a private citizen acts as an agent of the police, the exclusionary rule applies. Coolidge. Whether one acted as an agent of the police is determined by a consideration of all the circumstances of the case. Coolidge, at 487, 91 S.Ct. at 2048. Considering all the circumstances of the case, we believe that Mr. Redding was an agent of the Baldwin County Sheriff's Department. It is clear from the record that Mr. Redding did not *Page 48 
discover the marijuana accidentally. He was called to the scene by the sheriff's department after they had the "Ricky G." under surveillance for nearly three hours. By their surveillance, the deputies already were aware there was no one on board the "Ricky G." Upon Mr. Redding's arrival at the scene, they accompanied him on board. Under these circumstances, we can conclude only that Deputies Pierce and Anderson were attempting to accomplish indirectly through Mr. Redding that which they could not do directly themselves. We, therefore, reject the state's suggestion that Mr. Redding's discovery of the marijuana can support a finding of probable cause.
Having concluded there was no probable cause to justify the search and seizure, it is unnecessary for us to consider the second requirement under this exception for a warrantless search and seizure, namely, whether exigent circumstances existed. In view of our holding on this point, we pretermit discussion of the issues raised by the appeal of Nicaud v.State, because we deem this holding controlling in the disposition of the proceeding against the "Ricky G."
 II. One 1980 Ford Pick-up Truck
Defendant Godwin challenges the sufficiency of the evidence upon which the trial court ordered his pick-up truck condemned and forfeited. Godwin's truck was seized the night arrests were made at the "Ricky G." Testimony at trial established that in the early evening, Godwin's truck was parked approximately two hundred yards from the "Ricky G." Before the arrests were made, the "Ricky G." was moved and came to rest four hundred yards from the defendant's truck. When the Sheriff's Department moved in to effect the arrests, some of the suspects ran toward Godwin's truck. No marijuana was found on or near the truck, nor was the truck seen transporting any. Over defendant's objections alleged hearsay testimony was admitted at trial to the effect that four of the suspects arrived at the scene in Godwin's pick-up.
It is the state's contention that the evidence was sufficient to show that the vehicle was used in some manner to facilitate the transportation of the marijuana. We disagree. The applicable statute provides:
(a) The following are subject to forfeiture:
 (1) All controlled substances which have been manufactured, distributed, dispensed or acquired in violation of this chapter;
 (2) All raw materials, products and equipment of any kind which are used or intended for use in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance in violation of this chapter;
 (3) All property which is used or intended for use as a container for property described in subdivisions (1) or (2) of this subsection;
 (4) All conveyances, including aircraft vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the transportation for the purpose of sale or receipt of property described in subdivisions (1) or (2) of this subsection; . . .
Code 1975, § 20-2-93 (a)(1-4).
In Reeder v. State, 294 Ala. 260, 314 So.2d 853 (1975), this court stated that forfeiture statutes, because of their penal nature, are subject to strict construction. This court declined to liberally interpret the predecessor of the instant statute to allow the seizure and forfeiture of money. Jackson v. Evans,379 So.2d 1236 (Ala. 1979). Recently, in Singleton v. State,396 So.2d 1050 (Ala. 1981), we observed that a vehicle need not be loaded with drugs for transportation before it could be subject to forfeiture. In Singleton, we upheld forfeiture where the facts showed that the truck had backed up to the cargo door of an airplane that was carrying marijuana. There, the facts established that the truck was intended for use in the transporting of marijuana The facts in Singleton are dissimilar to those of the instant case. Here, the facts show only that the seized pick-up truck was used to transport individuals involved with the marijuana to the scene. We do not believe that is enough to sustain a forfeiture of the vehicle, nor do we believe that *Page 49 
such a use comes within the language of the forfeiture statute. We thus pretermit discussion of the other issues raised by the defendant and hold that the trial court was in error when it ordered the forfeiture and condemnation of the truck.
The judgment of the trial court is, therefore, reversed as to the proceedings against both the "Ricky G." and the 1980 Ford pick-up truck, and the cause is remanded to the trial court with directions to order the release of them to their owners.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
* [Emphasis added.]