MADDOX, Justice
(dissenting).
I am of the opinion that the judgment of condemnation of the automobile should be affirmed, and I base my opinion on what I consider to be the applicable law as applied to a factual situation such as this case presents. I recognize that the rule which allows the State to condemn another’s *28 property seems to place a heavy burden on automobile dealers like Metropolitan Toyota; nevertheless, it is my opinion that this Court, in prior cases, has sustained judgments of condemnation under similar facts and circumstances. Consequently, I believe that the Court in this case has failed to follow the law.
The majority states in its opinion the following:
“In cases arising under the controlled substances statute at issue here, this Court has noted the ‘analogous forfeiture provisions’ of § 28-4-285 and applied the above-discussed rules:
“ ‘The requisite notice necessary to excite suspicion and stimulate inquiry is necessarily determined by the facts of each particular case. It may be notice imputed by law, such as the reputation and general character of the violator in the community in which he works and lives.’
“Singleton v. State, 396 So.2d 1050, 1054 (Ala.1981) (citations omitted). See also Pickron v. State, 443 So.2d 905 (Ala.1983); Air Shipping International v. State, 392 So.2d 828 (Ala.1981); and Pugh v. State ex rel. Galanos, 441 So.2d 931 (Ala.Civ.App.1983).”
The majority then states:
“A close inspection of the statutes and cases, however, reveals that the statutes are not in pertinent respects similar, and that the ‘notice imputed as a matter of law’ and ‘reasonable diligence’ rules arise from provisions in the 1919 liquor law, Ala. Acts 1919, No. 7, which are not found in the controlled substances law.”
Because the majority fails to follow these previous decisions of this Court which have construed the same statute which is here involved, and because I believe that those cases correctly construe the legislative intent in passing those statutes dealing with the condemnation of property used in violating the laws relating to controlled substances, I must respectfully dissent. My dissenting views are based upon my opinion that those cases correctly state the standard to be applied when determining whether the owner of property has the requisite notice under the condemnation statutes relating to controlled substances. That rule is set out in Air Shipping Int’l v. State, 392 So.2d 828 (Ala.1981), as follows:
“ ‘It is the law of Alabama that once the State makes out a prima facie case to show violation of the statute which prohibits the transportation of [illegal liquors], the seizure, condemnation, and forfeiture of the vehicle used [are] permitted.... [U-Haul Company of Alabama v. State, 294 Ala. 330, 316 So.2d 685 (1975); Mars v. State ex rel. Black, Ala.Civ.App., 340 So.2d 1131 (1976).]’
“When that prima facie case was made, it became incumbent upon the appellants/claimants to show that they had no knowledge or notice of the illegal use proved, and could not by reasonable diligence have obtained knowledge of the intended illegal use so as to prevent it. U-Haul Company of Alabama v. State, supra. This aspect of the claimants’ burden has been commented upon in Flint Motor Car Co. v. State, 204 Ala. 437, 85 So. 741 (1920), a case, incidentally, cited to us by both sides:
“ ‘If the claimant knows the character of his vendee or mortgagor, and does not know or has not heard of his violating [the prohibition law] or if he does not know him, ordinary prudence should suggest inquiry, and if he does not gain information that he has been considered a violator of [the prohibition law], then he makes out a prima facie case of no negligence in the sale or disposition of [the car], and would be entitled to a decree of nonforfeiture of his claim unless the state rebuts this prima facie case by contradictory evidence or circumstances, or by showing the happenings of subsequent events which would arouse the suspicion of a reasonably prudent man so as to cause action upon his part to prevent the further use of the property for unlaw *29 ful purposes, and which he failed to prevent.’ ”
392 So.2d at 829-30.
The dissenting views hereinafter expressed should be considered in light of my opinion that Air Shipping should be followed in reviewing this case on appeal.
Metropolitan claims that the State did not prove the drugs were for sale or receipt. Of course, I am aware of the principle of law that mere possession of drugs will not suffice for condemnation of a vehicle under § 20-2-93. Reeder v. State, 294 Ala. 260, 265, 314 So.2d 853 (1975), but I believe the facts of this case show that the State proved, under applicable law, that the drugs were possessed by Pugh for sale, and that Metropolitan should have known that Pugh was reputed in the Mobile community to be a drug trafficker. It is un-controverted that Pugh had 1.89 pounds of marijuana in his possession when he was arrested; and, according to testimony introduced at the trial, Pugh was known by arresting officer Stokes as a major drug dealer in Mobile, and the judge stated during the trial that he could take judicial notice of Pugh’s reputation as a drug dealer, because he had sentenced him for cocaine trafficking himself, but I do not impute the judge’s knowledge to Metropolitan in order to sustain his judgment.
The law is that when a case is presented orally to the trial court, sitting without a jury, the court’s findings of fact are presumed to be correct unless shown to be contrary to the great weight of the evidence. Stated differently, this Court will not overturn a trial court’s factual findings in an ore tenus case if there is any evidence to support those findings. Eleven Automobiles v. State, 384 So.2d 1129 (Ala.Civ.App.1980). See, also, Cherokee Ins. Co. v. Frazier, 406 So.2d 881 (Ala.1981); Cougar Min. Co. v. Mineral Land & Min. Consultants, Inc., 392 So.2d 1177 (Ala.1981).
While the evidence in this case might lead to another conclusion, the quantity of the drug possessed, coupled with the officer’s testimony of the defendant’s reputation in the community, supports the trial judge’s finding that Pugh possessed the drugs for sale.
The standard of proof required in these cases is proof to “the reasonable satisfaction of the trial judge.” Pickron v. State, 443 So.2d 905 (Ala.1983). This Court stated the applicable law in Air Shipping Int’l v. State, 392 So.2d 828, 832 (Ala.1981), as follows:
“In this case, as in Flint Motor Car Co. v. State, supra, 204 Ala. at 437, 85 So. 741:
“ ‘The trial court saw and heard the witnesses ... and its conclusion upon the facts is like unto the verdict of a jury, and will not be disturbed by this court unless under similar circumstances the verdict of the jury would be set aside as upon a motion for a new trial; that is, was plainly contrary to the great weight of the evidence. ...’”
The case of Reeder v. State, 294 Ala. 260, 314 So.2d 853 (1975), cited by Metropolitan, is not persuasive on this point and may be distinguished on its facts. In the Reeder case, the defendant was held only to be possessing the drug. The defendant was away from the car where the drugs were found at least 12 hours every day. The car was left unlocked. The State found one-hundreth of a gram of marijuana in the car. The only additional evidence in that case was hearsay testimony of an informant that the defendant had sold marijuana. This Court held in that case that the evidence only showed possession, not possession for sale. In this case, the evidence of the quantity of the drug possessed, and of the defendant’s reputation in the community as a trafficker in drugs, is sufficient to distinguish the two cases. Here, I cannot say, as a matter of law, that the State failed to prove to the reasonable satisfaction of the trial judge that the marijuana was for sale or receipt, as the State alleged in the complaint; therefore, I would hold that the State proved its prima facie case.
There is no claim or evidence that Metropolitan had actual knowledge of Pugh’s *30 activities; therefore, the question is whether Metropolitan exercised due diligence in discovering Pugh’s reputation in the community.
Metropolitan first asserts that the State laid an improper foundation before introducing the testimony of Officer Stokes as to the reputation of Pugh. Metropolitan cites cases holding that it is necessary to show that the one whose character is in question lives or works in the community. What these cases actually hold is summarized in Riley-Akins Chevrolet Co. v. State, 224 Ala. 42, 138 So. 412 (1931):
“It is established by the decisions that the general bad character of a purchaser in the community of his residence or of his business is sufficient to impute notice to the seller, and the place of general reputation relates to the place of the residence of the purchaser or that of his business or occupation.” (Numerous citations omitted.)
The word “residence” in these cases is a word of limitation, not foundation. “Residence” means the community where the person lives and works.
The record discloses that three documents containing Pugh’s residence address in Mobile were introduced into evidence; one contained his business address in Mobile; and all the questions concerning Pugh’s reputation referred to his reputation in the Mobile community.
Petitioner also argues that a person’s bad reputation must be proved as of the time the owner put him in possession of the property. I believe the State sustained its burden in this regard. The fact that as of the time of the transaction the trial judge had previously sentenced Pugh to jail, coupled with Officer Stokes’s testimony that Pugh had been on trial at least five times in the past 12 months in Mobile, sufficiently showed Pugh’s reputation at the time the car was loaned to him.
The general bad reputation of a person in the community of his residence or business is sufficient to impute notice as a matter of law. See Equitable Credit Co. v. State, 212 Ala. 407, 102 So. 803 (1925); Biehl v. State, 234 Ala. 304, 174 So. 494 (1937); Riley-Akins Chevrolet Co. v. State, 224 Ala. 42, 138 So. 412 (1931); Singleton v. State, 396 So.2d 1050 (Ala.1981).
I would hold that knowledge of Pugh’s bad reputation could be imputed by law to Metropolitan, based upon the evidence presented in this case. Reasonable diligence on Metropolitan’s part would have revealed that it was loaning a car to one of the best known drug dealers in Mobile; however, it made no inquiry of him and no inquiry of anyone else regarding Pugh’s reputation. In fact, Pugh had previously been involved in another condemnation proceeding in Mobile. See, Pugh v. State ex rel. Galanos, 441 So.2d 931 (Ala.Civ.App.1983). There, Pugh had borrowed his brother’s car and was arrested for violation of the drug laws while using the car. The Court of Civil Appeals, in that case, held:
“In the present case, the owner testified that he did not know when he lent his brother his automobile that the brother would be using it to transport illegal drugs. However, numerous law enforcement officials testified that the owner’s brother, the defendant, had a reputation in the community as one of the largest drug traffickers in the area. The gist of the testimony was that the defendant/brother was known by the police and by the community at large as a drug dealer.” (Emphasis added.)
Id. at 934.
Petitioner argues that Toyota followed the standard industry practice of checking a person’s credit rating, and the standard industry practice of loaning automobiles, and that it presented uncontradicted expert testimony, on its motion for a new trial, that its practices indeed met the industry standard. Petitioner contends that complying with industry standards was an exercise of due diligence by it.
I cannot accept the idea that a showing of compliance with the “industry standard” can vary our rule of law that imputes notice of a person’s reputation to a car dealer, or to other persons, for that matter. The *31 policy of the state to stop the illegal trafficking in drugs is easily as stringent as it was during prohibition, when there were fewer cars and fewer people, and the law remains the same.
Petitioner has cited no cases, and my research has revealed none, where conforming to the “industry standard” was held to constitute the exercise of due diligence, as a matter of law. The applicable law is set forth in Singleton, supra, at 396 So.2d 1054, as follows:
“The requisite notice necessary to excite suspicion and stimulate inquiry is necessarily determined by the facts of each particular case. It may be notice imputed by law, such as the reputation and general character of the violator in the community in which he works and lives.” (Emphasis added.) (Numerous citations omitted.)
In Singleton, a bank was the intervenor. Singleton had been a customer for several years. He was personally known at the bank and was established in the trucking industry. Singleton had no prior known criminal activity, and apparently a check would have shown only that Singleton had a good reputation, and no reputation as a drug violator, in the community in which he resided and worked.
Here, the court could have found that Metropolitan continued to let one of the largest drug dealers in the Mobile area keep possession of an automobile for eleven days in violation of its established procedure of allowing a maximum loan of overnight or 48 hours, even after Metropolitan had notice that Pugh had lied on the financial statement given to Metropolitan at the time the car was loaned to Pugh for the alleged purpose of showing it to his wife.[1]
Based on the foregoing, I would hold that the State met its burden of proving to the reasonable satisfaction of the trial judge that the car owned by Metropolitan was used to facilitate the transportation of controlled substances, as required under Code 1975, § 20-2-93, and that Metropolitan failed to show that it could not by reasonable diligence have obtained knowledge of the intended illegal use of its car so as to prevent it. Air Shipping Int’l v. State, supra.
If Metropolitan did not know Pugh, it should have made some inquiry about his reputation other than his previous credit rating. Metropolitan should not be allowed to vary the law that knowledge of Pugh’s reputation could be imputed to it, by a showing that it followed an industry standard that is inconsistent with our legal requirements.
I would affirm the judgment of the trial court.
ADAMS and STEAGALL, JJ., concur.

. Moss, Metropolitan’s salesman, testified concerning the loan of the vehicle:
"I had informed the manager that he [Pugh] had in conversation mentioned that his wife had seen a vehicle, the same type vehicle but a different color, at another dealership. So, I had asked whether or not he thought we should let the customer use the car or what, you know, we should do at that stage of the game. And at that time he told me, yes, he can let the customer go ahead and use the car to show it to his wife." (Emphasis added.)